2008 WY 146

**David Roy CONINE, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–07–0202.

Supreme Court of Wyoming.

Dec. 12, 2008.

Representing Appellant: Tina N. Kerin, Appellate Counsel, Wyoming Public Defender's Office; Diane E. Courselle, Faculty Director, and Jonah Buckley and Robert Pascoe, Student Interns, of the Defender Aid Program. Argument by Mr. Pascoe.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Brandi L. Monger, Assistant Attorney General. Argument by Ms. Monger.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] A jury convicted Appellant David Roy Conine of aggravated assault and battery. On appeal, Conine challenges the sufficiency of the evidence to sustain his conviction and asserts reversible error based on alleged instances of prosecutorial misconduct during voir dire and opening statement. We affirm.

## ISSUES

[¶ 2] Conine presents the following issues:

I. Was the evidence legally insufficient to support a conviction for aggravated assault when, in the manner used, the allegedly deadly weapon—a frying pan—caused only minor injuries?

II. Did the prosecutor during voir dire improperly precondition the jury to conclude that the frying pan was a deadly weapon?

III. Did the prosecutor improperly vouch for the credibility of the alleged victim when he told the jury that Jerry Cox seems to be "a pretty honest man"?

## FACTS

[¶ 3] In October 2006, Conine and the victim, Jerry Cox, resided at the Lazy U Bunkhouse, a boarding house with individual bedrooms and shared common areas for cooking and socializing. On the evening of October 10, Cox was in the kitchen area preparing his dinner when Conine approached him and started a verbal altercation regarding an incident that had occurred several days earlier. Cox tried to ignore Conine, but Conine continued to become more aggressive. Cox eventually turned away from Conine in an attempt to halt the exchange. When he turned back around, Conine punched him several times about the head and face and then hit him with an aluminum frying pan on the left side of his

face, his right jaw, and the top of his head. As a result of Conine's actions, Cox lost a tooth and suffered significant pain, bruising and swelling to his face and head.

[¶4] The State charged Conine with aggravated assault and battery, alleging that Conine knowingly caused bodily injury to Cox with a deadly weapon; to wit, the frying pan. Following a one-day trial, during which both Conine and Cox testified and provided differing accounts of the events surrounding the altercation and Cox's resulting injuries, the jury found Conine guilty on the charged offense.[1] The district court subsequently sentenced Conine to a term of imprisonment of three to eight years. This appeal followed.

## DISCUSSION

### A. Sufficiency of the Evidence

[¶5] Conine questions the sufficiency of the evidence to sustain his conviction. When reviewing a sufficiency of the evidence claim, we analyze the evidence, and any applicable inferences that may be reasonably drawn from it, in the light most favorable to the State. *Dettloff v. State*, 2007 WY 29, ¶22, 152 P.3d 376, 383 (Wyo.2007); *Grissom v. State*, 2005 WY 132, ¶24, 121 P.3d 127, 136 (Wyo.2005). We have consistently held that it is the jury's responsibility to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts. *Sotolongo–Garcia v. State*, 2002 WY 185, ¶11, 60 P.3d 687, 689 (Wyo. 2002). We will not substitute our judgment for that of the jury but will only determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Grissom*, ¶24, 121 P.3d at 136; *Pacheco v. State*, 2004 WY 160, ¶6, 102 P.3d 887, 889 (Wyo.2004); *Sotolongo–Garcia*, ¶11, 60 P.3d at 689; *Lane v. State*, 12 P.3d 1057, 1063 (Wyo.2000).

[¶6] Conine was convicted of aggravated assault and battery under Wyo. Stat. Ann. § 6–2–502(a)(ii) (LexisNexis 2007), which states in pertinent part: "A person is guilty of aggravated assault and battery if he ... knowingly causes bodily injury to another with a deadly weapon." At trial, and in accordance with the statute, the district court instructed the jury that it should not convict Conine unless it found, beyond a reasonable doubt, that he caused bodily injury to Cox with a deadly weapon:

The necessary elements of the crime of Aggravated Assault and Battery, as charged in the Information, are:

1. On or about the 10th day of October, 2006;

2. In Campbell County, Wyoming;

3. The Defendant, David Roy Conine;

4. Knowingly caused;

5. Bodily injury to another person, Jerry Cox;

6. With a deadly weapon.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

The district court instructed the jury on these statutory definitions of the elements of the offense:[2]

"Bodily injury" means physical pain, illness or any impairment of physical condition.

"Deadly weapon" means but is not limited to a firearm, explosive or incendiary material, motorized vehicle, an animal or other device, instrument, material or substance which in the manner it is used or is intended to be used is reasonably capable of producing death or serious bodily injury.

"Serious bodily injury" means bodily injury which creates a substantial risk of death or which causes miscarriage, severe disfigurement or protracted loss or impair-

---

1. The district court's "Judgment Upon Jury Verdict" and "Sentence" incorrectly identifies the criminal offense as "Aggravated Assault with a Deadly Weapon."

2. These definitions are taken verbatim from Wyo. Stat. Ann. § 6–1–104(a) (LexisNexis 2007).

ment of the function of any bodily member or organ.

[¶ 7] In attacking the sufficiency of the evidence, Conine first argues the evidence failed to support the jury's finding that the frying pan used to assault Cox constituted a deadly weapon. Conine asserts that the jury could not properly have viewed the frying pan as a deadly weapon because Cox suffered only minor injuries. According to Conine, the frying pan could only have been deemed a deadly weapon if, in the manner it was used, it actually caused serious bodily injury to Cox.

[¶ 8] The problem with Conine's argument is that the statutes governing his conviction do not require that the weapon used on Cox in fact cause serious bodily injury; they only require that Cox incurred bodily injury caused by Conine's use of an object which, in the manner it was used, was **reasonably capable** of producing death or serious bodily injury. The State was not required to prove, nor was the jury required to find, that Cox suffered serious bodily injury when Conine hit him with the frying pan. To convict Conine, the jury only needed to find from the State's evidence that Conine caused bodily injury to Cox by attacking him with an object that might reasonably cause serious bodily injury or death.

[¶ 9] Conine also argues that, even if deemed a deadly weapon, there was no evidence from which the jury could rationally conclude that the frying pan, rather than his fists, caused Cox's bodily injuries. Conine's argument simply ignores the testimony and evidence presented at trial. Cox specifically remembered receiving three distinct blows from the frying pan: the first to the left side of his face with what felt like the bottom of the pan; the second to the top of his head with the inside of the pan; and the third to his right jaw with what felt like the edge of the pan. According to Cox, the blow to his jaw was in the area just below where he lost the tooth. Cox also testified that he felt pain in his face and head, particularly the jaw and scalp areas from those blows, and continued to have pain for approximately two weeks, along with difficulty chewing. In addition, a police officer and paramedic responding to the Bunkhouse testified, without objection, that Cox reported being struck multiple times in the face with the frying pan. They testified Cox had quite a bit of facial swelling and redness to the sclera of his eye, which was consistent with the reported blows received from the frying pan. The frying pan, which was admitted at trial, showed extensive damage—it was extremely bent and deformed. Finally, Conine admitted striking Cox once with the frying pan on the head.

[¶ 10] Viewing the evidence as a whole, and affording the State every favorable inference which may be fairly and reasonably drawn from it, we have no trouble concluding the evidence was sufficient for a reasonable jury to find beyond a reasonable doubt the frying pan caused Cox bodily injury. We likewise have no trouble concluding the evidence was sufficient to permit a rational jury to find beyond a reasonable doubt the frying pan was a deadly weapon. Applying common sense and experience, the jury could have rationally determined the frying pan, when used as Conine did to beat Cox about the head and face, was reasonably capable of causing serious bodily injury or death. In sum, we find ample evidence to support Conine's conviction for aggravated assault and battery.

**B. Prosecutorial Misconduct**

[¶ 11] Conine alleges instances of prosecutorial misconduct during voir dire and opening statement, which he claims warrant reversal of his conviction. Conine did not object at the trial to the alleged instances of misconduct and, therefore, our review is limited to the plain error doctrine, which requires: (1) the record clearly reflect the incident alleged as error; (2) Conine demonstrate the error transgressed an unequivocal rule of law in a clear and obvious, not merely arguable, way; and (3) Conine demonstrate the error adversely affected a substantial right resulting in material prejudice to him. *Callen v. State*, 2008 WY 107, ¶ 20, 192 P.3d 137, 145 (Wyo.2008); *Talley v. State*, 2007 WY 37, ¶ 9, 153 P.3d 256, 260 (Wyo.2007). Before we hold that an error mandates reversal of a conviction, we must conclude,

based on the entire record, that a reasonable possibility exists that the outcome of Conine's trial might have been more favorable to him absent the error. *Id.; Williams v. State,* 2002 WY 136, ¶ 21, 54 P.3d 248, 254 (Wyo.2002).

*Voir dire*

[¶ 12] Conine's first complaint of misconduct is directed at the following questions posed by the prosecutor during voir dire:

> Now, folks, the charge in this case is aggravated assault and battery with the use of a deadly weapon. I think we can all agree that things such as firearms, a knife, a baseball bat, brass knuckles, could generally be considered to be a deadly weapon? Are you all in agreement with that?
>
> (Panel indicating yes.)
>
> Would you also agree that the manner in which the object is used that makes it deadly?
>
> (Panel indicating in the affirmative.)
>
> What else is there that could possibly be deadly? Well, could this be deadly? I am holding a pen. Can you conceive of a way in which this could be used that would [be] deadly? How about in the eye, up the nose, in the ear, possibly in the throat?
>
> How about, say, a belt buckle, that somebody in a rodeo is wearing? Could that be used as [a] deadly weapon?
>
> (No response.)
>
> How about shoes? Is that possible to kick or hit with?
>
> (No response.)
>
> How about a frying pan? Can you agree with the thought that possibly a frying pan could be considered a deadly weapon?
>
> (No response.)
>
> For those of you who sit on this jury, I believe that you will hear this definition: Under Wyoming law, a deadly weapon means, but is not limited to a firearm, explosive, or incendiary material, something that burns, a motorized vehicle, an animal, or other device, instrument, material, or substance which in the manner it is used or is intended to be used is reason-ably capable of producing deadly or serious bodily injury.
>
> Is there anyone here who does not understand that definition?
>
> (No response.)

[¶ 13] Conine contends the prosecutor impermissibly questioned the jury regarding the law, as well as the meaning of words within the context of the law, so as to precondition the jurors to find that the frying pan was a deadly weapon. He asserts the prosecutor's questioning violated several restrictions of W.R.Cr.P. 24(c). Conine further claims he was materially prejudiced thereby because the manner in which the pan was used, as well as the bodily injury caused by its use, was hotly contested at trial.

[¶ 14] W.R.Cr.P. 24(c) governs voir dire and states in pertinent part:

> (1) The only purpose of the examination is to select a panel of jurors who will fairly and impartially hear the evidence and render a just verdict.
>
> (2) The court shall not permit counsel ... to attempt to precondition prospective jurors to a particular result, comment on the personal lives and families of the parties or their attorneys, nor question jurors concerning the pleadings, the law, the meaning of words, or the comfort of jurors.
>
> (3) In voir dire examination counsel ... shall not:
>
> > (A) Ask questions of an individual juror that can be asked of the panel or a group of jurors collectively;
> >
> > (B) Ask questions answered in a juror questionnaire except to explain an answer;
> >
> > (C) Repeat a question asked and answered;
> >
> > (D) Instruct the jury on the law or argue the case; or
> >
> > (E) Ask a juror what the juror's verdict might be under any hypothetical circumstance.
>
> Notwithstanding the restrictions set forth in subsections 24(c)(3)(A)-(E), counsel ... shall be permitted during voir dire examination to preview portions of the evidence from the case in a non-argumentative manner when a preview of the evi-

dence would help prospective jurors better understand the context and reasons for certain lines of voir dire questioning.

[¶ 15] We agree with Conine that the prosecutor's questions violated Rule 24(c). The essential function of voir dire is to allow for the impaneling of a fair and impartial jury. Properly conducted voir dire examination aspires to identify bias and prejudice, not implant it. *Law v. State*, 2004 WY 111, ¶ 32, 98 P.3d 181, 192 (Wyo.2004). In this case, the entire line of highlighted questioning by the prosecutor served only to instruct the prospective jurors on the law and place the suggestion in their minds that an object such as a frying pan could be a deadly weapon. In effect, the prosecutor was using voir dire to argue an important aspect of the State's case.

[¶ 16] Although improper, we must still determine whether the challenged questions caused material prejudice to Conine. We must answer that question in the negative. The prosecutor's questions were not so suggestive as to commit any member of the jury panel to find a frying pan was a deadly weapon. The jury was repeatedly advised that findings of facts were exclusively within their realm. As we have already discussed, there was more than sufficient evidence to support a finding that the frying pan was used as a deadly weapon. In light of the entire record, we do not find a reasonable possibility exists that the outcome of the trial would have been more favorable absent the prosecutor's indiscretion during voir dire.

*Opening statement*

[¶ 17] Conine contends the prosecutor engaged in misconduct when he uttered the following highlighted statement during his opening statement:

Mr. Cox will tell you that during the early evening hours of October 10, 2006, he was in the common area, trying to cook some food after having worked for a long day. **He is a pretty honest man seems to be.** He will also tell you he had been drinking. His drink of choice is something called a 40, which is a large beer, 40 ounces. I think he will tell you he had two of them that evening.

Conine contends the prosecutor's statement amounted to improper vouching of the credibility of Cox. Conine is correct that it is improper for a prosecutor to personally vouch for the credibility of a witness. *Lane*, 12 P.3d at 1065. In this regard, we have said:

When the prosecutor asserts his credibility or personal belief, an additional factor is injected into the case. This additional factor is that counsel may be perceived by the jury as an authority whose opinion carries greater weight than their own opinion: that members of the jury might be persuaded not by the evidence, but rather by a perception that counsel's opinions are correct because of his position as prosecutor, an important state official entrusted with enforcing the criminal laws of a sovereign state. While the prosecutor is expected to be an advocate, he may not exploit his position to induce a jury to disregard the evidence or misapply the law.

*Id.* (quoting *Barela v. State*, 787 P.2d 82, 83–84 (Wyo.1990)). However, even though we find that the prosecutor's "honest man" remark transgressed this clear rule of law, we are unable to conclude, based on our review of the entire record, that it prejudiced Conine to a degree that requires reversal of his conviction.

[¶ 18] The prosecutor's statement was isolated, and the district court twice instructed the jury concerning its responsibilities to evaluate the credibility of the witnesses, as well as weigh the evidence and resolve factual issues, in determining Conine's guilt or innocence on the charged crime. Immediately prior to the prosecutor's opening statement, the district court instructed the jury:

On the other hand, it is the exclusive province of the jury to weigh and consider all evidence which is presented to you; to determine the credibility of all witnesses who testify before you, and from such evidence and testimony, to determine the issues of fact in this case.

This duty you shall perform with sincere judgment and sound discretion, uninfluenced by sentiment, conjecture, or by passion or prejudice against any of the liti-

gants in this case, or by public opinion or public feeling. The litigants have the right to demand and expect that you will conscientiously and dispassionately consider and weigh the evidence and apply the law of the case, and that you will reach a just verdict, regardless of the consequences. That verdict must express the individual opinion of each juror . . . .

You are the exclusive judges of the facts and of the effect and value of the evidence, but you must determine the facts from the evidence produced here in court. If any evidence is admitted and afterwards is ordered by me to be stricken out, you must disregard entirely the matter thus stricken, and if any counsel intimates by any of his questions that certain hinted facts are, or are not true, you must disregard any such intimation and must not draw any inference from it. As to any statement made by counsel in your presence concerning the facts of the case, you must not regard such a statement as evidence[.] . . .

\* \* \* \*

The jury is the sole judge of the credibility of the witnesses, and of the weight to be given their testimony. You should take into consideration their demeanor upon the witness stand, their apparent intelligence, their means of knowledge of the facts testified to, the interest, if any, which any witness may have in the outcome of this trial, the prejudice or motives, or feelings of revenge, if any, which have been shown by the evidence. In doing so, you may take into consideration all of the facts and circumstances in the case and give such

weight as you think the same are entitled to, in the light of your experience and knowledge of human affairs.

[¶ 19] The district court also gave the jury a virtually identical instruction before the commencement of deliberations. We presume the jury followed the district court's instructions. *Haynes v. State*, 2008 WY 75, ¶ 22, 186 P.3d 1204, 1209 (Wyo.2008); *Guy v. State*, 2008 WY 56, ¶ 19, 184 P.3d 687, 694 (Wyo.2008). Additionally, the prosecutor reiterated, during his principal and rebuttal closing arguments, that it was the jury's exclusive role to determine issues of credibility. Finally, as previously noted, the evidence of Conine's guilt was strong. Weighing these factors, we do not believe, in the absence of the challenged comment, the verdict might have been more favorable to Conine.

## CONCLUSION

[¶ 20] The record contains sufficient evidence to support Conine's conviction for aggravated assault and battery. The prosecutor's conduct during voir dire and opening statement did not constitute plain error, warranting reversal of Conine's conviction. Affirmed.